### STRAIN, State Bank Com'r, et al. v. UNITED STATES FIDELITY & GUARANTY CO.

(Circuit Court of Appeals, Eighth Circuit. September 12, 1923.)

No. 6256.

1. **Banks and banking ⊜15—State depositors' guaranty fund statute held inapplicable where depositors receive no payment out of fund.**

The Oklahoma statute (Comp. St. 1921, §§ 4161–4189), providing for a bank depositors' guaranty fund and for a lien for the benefit of the fund for payments therefrom, is not applicable where no money has ever been paid from the fund to depositors of an insolvent bank, as no lien is created against the assets of the bank in favor of the fund.

2. **Courts ⊜303(2)—Suit against state commissioner of banks held not against state and is therefore within jurisdiction of federal courts; "suit against state."**

A suit by a surety on a bond to secure deposits in an insolvent bank against the state bank commissioner to obtain priority of deposits paid by surety to the United States and for ratable distribution of other secured deposits with unsecured deposits, in view of decisions of the state Supreme Court fixing the status of such officials as analogous to that of a receiver, or trustee in bankruptcy, or assignee for the benefit of creditors,

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

is not a "suit against the state," and is therefore within the jurisdiction of the federal courts.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Suit Against the State.]

3. Banks and banking ⊜⇒80(7)—Taking over of bank by commissioner held not "insolvency" or act of bankruptcy, so as to give United States deposits priority.

Under Rev. St. § 3466 (Comp. St. § 6374), giving priority to debts due the United States by an insolvent, the taking over of a bank by the state bank commissioner of Oklahoma was not insolvency, nor an "act of bankruptcy," within Bankruptcy Act, § 3a (Comp. St. § 9587), so as to give deposits of the United States priority over other deposits, since the bank commissioner does not necessarily take possession because of bank's insolvency, within the meaning of federal laws, and hence a surety on a bond to secure such deposit was not entitled to priority, under Rev. St. § 3468 (Comp. St. § 6374).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Insolvency—Insolvent.]

4. Subrogation ⊜⇒7(1)—Surety on bond to secure payment of deposits held entitled to share ratably with unsecured depositors.

A surety on a bond to secure payment of deposits in an insolvent bank, who has paid such deposits, is entitled, under the doctrine of subrogation, to share ratably with the other unsecured depositors; Laws Okl. 1913, c. 22, § 9, providing that secured deposits shall not be protected by the depositors' guaranty fund, and Laws Okl. 1915, c. 58, § 5, relating to payment of such sureties, not being applicable where the guaranty fund is not involved.

Morris, District Judge, dissenting in part.

Appeal from the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Suit by the United States Fidelity & Guaranty Company against Joe H. Strain, Bank Commissioner of the State of Oklahama, and others. Decree for plaintiff, and defendants appeal. Affirmed as modified.

M. W. McKenzie, Asst. Atty. Gen., of Oklahoma (George F. Short, Atty. Gen. of Oklahoma, on the brief), for appellants.

C. B. Ames, of Oklahoma City, Okl., and Joseph A. McCullough, of Baltimore, Md. (Ames, Lowe & Richardson, of Oklahoma City, Okl., on the brief), for appellee.

Before STONE, Circuit Judge, and MORRIS and FARIS, District Judges.

STONE, Circuit Judge. Appellee was surety upon five bonds securing deposits in the Bank of Commerce of Okmulgee. Two of these deposits were of funds belonging to the United States; one of state funds and two of funds belonging to receivers. On November 1, 1921, the state bank commissioner declared the bank to be insolvent, placed a state bank examiner in physical charge thereof and has since been administering its affairs. Appellee paid the losses on all of the above funds and procured assignments of the claims from its principals therein.

By this bill, as amended, appellee alleges the above facts; also, that the bank was and is insolvent in fact; that there were no funds in the

depositors' guaranty fund of the state; that no payments were made to the depositors of this bank from such fund; that the state officers in charge of the bank are threatening to pay the unsecured depositors thereof in entire exclusion of amounts due the principals in the above bonds; that, as to the amounts paid by appellee to the United States, it is entitled to priority of payment and that as to such payments to principals on the other bonds it is entitled to share ratably with unsecured depositors. The purpose of the bill is to secure this priority and ratable distribution.

Motions to dismiss were overruled and, appellants declining to plead further, a decree was entered enjoining appellants from paying the unsecured depositors without first paying the above claims paid by appellee on account of the United States and without first allowing and thereafter ratably paying the other claims. A mandatory clause to the same effect was also part of the decree. From such decree this appeal is brought.

The claims of appellants presented here are as follows:

(1) This is a suit against the state.

(2) The national statutes giving the United States preferential payment do not apply.

(3) The appellee is not entitled to share ratably with unsecured depositors.

## 1. Is This a Suit Against the State?

[1] Pursuant to the state Constitution (article 14, § 1), the state statutes (Comp. St. Okl. 1921, §§ 4161–4189) have established a banking board and provided for a fund, called the guaranty fund, to secure the repayment to depositors of deposits in insolvent banks, the affairs of which are liquidated by the board under the statutes. The statutory provisions relating to the guaranty fund provide that cash therefrom or warrants drawn thereon may be used by the board to repay depositors in a bank in course of liquidation by the board, and that a lien upon the assets of such bank shall exist in favor of the guaranty fund to secure reimbursement thereto for any such cash or warrants thus used. No cash was ever paid from this fund nor were any warrants ever drawn thereon in connection with this bank. The guaranty fund provision of the statute has since (April 12, 1923) been repealed. As no liability to such fund from this bank has ever arisen, no lien upon the assets of the bank exists. According to the allegations of the bill and the necessary admissions of the motions to dismiss, the commissioner is proceeding with the liquidation of the bank and is threatening to distribute its cash assets to the unsecured depositors. Therefore, the guaranty fund provisions of the statutes have nothing to do with the situation here present. Hence, decisions based upon the active presence of and dealing with such fund are inapplicable here. To this class belongs Lankford v. Platte Iron Works, 235 U. S. 461, 35 Sup. Ct. 173, 59 L. Ed. 316.

[2] The above elimination of the guaranty fund herein narrows the considerations pertinent to the point now discussed. The question becomes, What is the legal status of the bank commissioner and the bank examiner in possession of the assets and engaged in liquidating the

affairs of this bank under the authority of the state statutes? Absent such statutes, such liquidation would be a natural judicial proceeding in equity. The state has authority, through the exercise of its police power, to provide other than judicial means and instrumentalities through which to work out such result. This it has done. The status of such officials is not only. revealed by the character of their duties but is definitely fixed by decisions of the state Supreme Court. In Ward v. Oklahoma State Bank, 51 Okl. 193, 151 Pac. 852, and Briscoe v. Hamer, 50 Okl. 281, 150 Pac. 1101, it is held to be "quite analogous to that of a receiver or trustee in bankruptcy, or of an assignee for the benefit of creditors." Also, the case of State v. Norman, 86 Okl. 36, 43, 206 Pac. 525, 528, holds:

"If the guaranty fund does not become a creditor of the failed bank—that is, if there are no moneys paid out of the fund to the depositors of such failed bank—obviously the proceeds of the assets are distributed among the other creditors in the process of winding up the affairs of such bank pursuant to the general directions to the bank commissioner contained in the general statutes hereinbefore referred to."

We conclude, therefore, that this is not an action against the state but is within the rule and reasoning of Weiland v. Pioneer Irr. Co., 238 Fed. 519, 151 C. C. A. 455, Weyman-Bruton Co. v. Ladd, 231 Fed. 898, 146 C. C. A. 94 (both decided by this court) and the numerous cases from the Supreme Court which are cited therein.

2. Is the Claim of the United States Entitled to Priority of Payment?

[3] This claim is based upon section 3466 of the Revised Statutes of the United States (Comp. St. § 6372) which is as follows:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

Section 3468 (Comp. St. § 6374) affirms the right of subrogation to a paying surety, such as appellee. We think this claim is directly ruled by the late decision of the Supreme Court of the United States in United States v. Oklahoma, 261 U. S. 253, 43 Sup. Ct. 295, 67 L. Ed. ——, decided February 19, 1923. That was an action by the United States against the state of Oklahoma claiming a priority of payment, based on section 3466, out of the guaranty fund on account of a deposit in a bank taken over by the bank commissioner. Two points were decided thereby, namely, that a suit against the guaranty fund was a suit against the state; and that the United States was not entitled to priority under the above section. Counsel attempt to avoid and distinguish that case on the ground that that decision was based on the. presence of the guaranty fund and the absence of any showing of actual insolvency in that case. The guaranty fund is absent here and was not only present in that case but controlling upon the point of

whether that action was one against the state. That point, however, was distinctly separated and did not affect the second point there decided, which was upon a claimed right to priority of payment made by the United States. The court, as to the latter point, held there that no such priority existed because section 3466 did not apply to the facts there present. The court clearly states that there were two reasons why the section did not apply there. They were (1) that no actual insolvency was shown and (2) that none of the particular acts, required by the section as evidencing such insolvency, had occurred. It is true that actual insolvency does appear in this case but it does not follow that this difference distinguishes the above decision. It leaves untouched the other ground, namely, absence of the particular acts, required by the section as evidencing such insolvency. In that opinion, Mr. Justice Butler says of the priority given by the section:

"Mere inability of the debtor to pay all his debts in ordinary course of business is not insolvency within the meaning of the act, but *it must be* manifested in one of the modes pointed out in the latter part of the statute which defines or explains the meaning of insolvency referred to in the earlier part, * * * where the debtor is divested of his property *in one of the modes specified in the act,* the person who becomes invested with the title is made trustee for the United States and bound first to pay its debt out of the debtor's property."

Then, after showing that there could be no claim to be within the section except upon the ground that "an act of bankruptcy is committed," the learned justice disposes of that ground by saying:

"But it is claimed that the position of the bank commissioner in taking charge of the bank's affairs under section 302 is analogous to that of a receiver or a trustee in bankruptcy, or that of an assignee for the benefit of creditors. The facts set forth in the complaint do not constitute an act of bankruptcy as defined by the federal Bankruptcy Act (section 3a [Comp. St. § 9587]). There is not alleged any conveyance to defraud, or preference through transfer or through legal proceedings, or general assignment for the benefit of creditors. Nor is the case within the meaning of the last clause of section 3a (4), 'or because of insolvency a receiver or trustee has been put in charge of his property under the laws of a state. * * *' The allegations do not show insolvency within the meaning of section 3466 or of the Bankruptcy Act. The insolvency contemplated by section 302 of the state law is not the same or equivalent condition. The bank commissioner does not take possession because of the existence of insolvency within the meaning of these federal laws. *He is not a receiver or trustee put in charge because of any such insolvency. He acts as an arm or instrumentality of the state in the exercise of its police powers to effect the purpose of the law for the protection of depositors.* It would defeat the purpose of that law to require that the bank must be insolvent within the meaning defined in section 3466 or in the Bankruptcy Law before the benefit of the state law can be made available to depositors. A primary purpose of his possession is the prompt payment of depositors by the use of the state guaranty fund to the extent necessary and the case is to be distinguished from that defined in the Bankruptcy Act, *and the commissioner is not a receiver or trustee within its meaning.* The legislation of Oklahoma, so far as banks are concerned, does not define acts of bankruptcy or deal with bankrupt or insolvent banks otherwise than by the state law herein referred to.

"As insolvency within the meaning of section 3466 was not necessary for the taking of possession by the bank commissioner and is not shown to exist, *and as no act of bankruptcy as defined by applicable federal legislation on the subject of bankruptcies or as defined by any law of Oklahoma is shown*

*to have been committed, and as the debtor bank was not divested of its assets in one of the modes specified in section 3466, the case is not within that section."*

The above italicized portions (all italics being ours) of this opinion exactly meet and answer the claim and argument here made and compel a denial thereof. With this statutory preference denied, the claim on account of these payments to the United States takes the same rank as such payments for any other depositor.

### 3. Is the Appellee Entitled to Share Ratably with Unsecured Depositors?

[4] As presented here this claim applied only to the payments made on account of the deposits of the receivers which were secured by appellee. However, under the above disposition of the payments made to the United States, such payments are of the same class as those made to the receivers and entitled to the same rights.

Undoubtedly, a paying surety is entitled to be subrogated to all the rights of his principal as to the amount paid. The rights of these principals were those of ordinary depositors. Therefore, appellee is entitled to share ratably with other depositors, unless there is some governing statutory bar thereto. Appellants claim that such bar exists. In the case of Columbia Bank & Trust Co. v. United States Fidelity & Guaranty Co., 33 Okl. 535, 136 Pac. 556, the Supreme Court of the state construed the Banking Act to exclude secured depositors from the benefit of the guaranty fund. The following year, 1913, the Legislature passed an act declaring that:

"No deposit in a state bank, otherwise secured, shall be protected by, or paid out of the depositors' guaranty fund, created under the laws of the state of Oklahoma. * * *" Chapter 22, § 9, Session Laws 1913.

In 1915, the Legislature enacted that a paying surety on public deposits in a bank taken over by the bank commissioner should share ratably with the guaranty fund in the assets of such bank. Chapter 58, § 5, Session Laws 1915. This last act has recently been declared void because of defective title. It is upon the above statutes, as construed by the above decisions, that appellants rely. None of them are here applicable because they relate solely to instances where the guaranty fund is involved and that fund is in no way involved in this action.

The necessary conclusion is, therefore, that appellee is entitled to share ratably with unsecured depositors in any distribution of the assets of this bank. As the bill alleges and the motions admit that the commissioner is threatening to pay out these assets to the unsecured depositors to the exclusion of the claims of appellee, it is proper that an order shall be made protecting the above defined rights of appellee.

The decree will be modified to deny any priority of payment to appellee and to require payment of all of appellee's claims ratably with unsecured depositors. As so modified, the decree is affirmed at the cost of appellants.

MORRIS, District Judge, dissents from that portion of the above opinion denying priority to claims asserted as due the United States.