**UNITED STATES FIDELITY & GUARANTY CO. v. PORTER, Commissioner of Finance of Idaho.**

(District Court, D. Idaho, C. D. December 27, 1924.)

No. 828.

**1. Judgment ⬅713(2), 720—Ruling as to conclusiveness of former judgments, stated.**

Estoppel by former judgment is conclusive where the former judgment was upon the same cause of action, not only as to questions actually adjudicated but also as to those which might properly have been submitted, while, where the causes of action are different, estoppel by the former judgment extends only to such issues as were actually determined.

**2. Judgment ⬅713(2)—Final decree of dismissal in former action held to bar second action on same cause, though more fully alleged.**

In action by surety on deposit of Indian funds under Rev. St. §§ 3466, 3468 (Comp. St.

§§ 6372, 6374), to have its claim declared a preference against funds of insolvent state bank in hands of state commissioner of finance, final decree of dismissal of former action *held* to estop plaintiff from suing on same cause of action, though allegations that defendant took possession of funds by virtue of assignment were first made in second action.

**3. Banks and banking ⬅️80(4)—Evidence held insufficient to show insolvency.**

Under Rev. St. § 3466 (Comp. St. § 6372), giving a preference to debts due by insolvent debtor to United States, insolvency of bank *held* not shown by proof that balance disclosed by daily statement was incorrect or that certain bills receivable were without value, where the statement showed excess of resources over indebtedness.

**4. Banks and banking ⬅️80(4)—Capital stock not "debt" in determining insolvency.**

In determining question of insolvency, capital stock and surplus in no sense constitute indebtedness of bank, its obligation to a stockholder not being a debt, but latter's right being to receive ratable share of assets after all debts are paid.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Debt.]

**5. Banks and banking ⬅️80(4)—Idaho state finance commissioner held not shown to have taken over bank assets under assignment.**

In suit by surety to have declared a preference its claim against insolvent state bank within Rev. St. §§ 3466, 3468 (Comp. St. §§ 6372, 6374), giving a priority to debts due United States, evidence *held* insufficient to show that Idaho state finance commissioner took charge of affairs of bank under an assignment by resolution of board of directors, where such resolution did not purport to be an assignment but simply a determination to discontinue business.

**6. United States ⬅️76—Right of surety's preference as for debt due United States wholly dependent on statute.**

The right of a surety to a preference under Rev. St. §§ 3466, 3468 (Comp. St. §§ 6372, 6374), giving preference to debts due the United States, is a creature of statutory law and exists only in cases where the facts fall strictly within provisions of statute.

In Equity. Suit by the United States Fidelity & Guaranty Company, a corporation, against E. W. Porter, as Commissioner of Finance of the State of Idaho, and in charge of the Union State Bank, an insolvent state banking corporation, and its affairs. Judgment of dismissal.

Gustin & Pence, of Salt Lake City, Utah, for plaintiff.

Randall & Becker, of Lewiston, Idaho, for defendant.

DIETRICH, District Judge. In its setting the case is in many respects analogous to United States v. Oklahoma, 261 U. S. 253, 43 S. Ct. 295, 67 L. Ed. 638; Strain v. U. S. Fidelity & Deposit Co. (C. C. A.) 292 F. 698; Id., 264 U. S. 570, 44 S. Ct. 334, 68 L. Ed. 854, and Bramwell v. U. S. Fidelity & Guaranty Co. (C. C. A., 9th Cir.) 299 F. 705. That is to say:

On November 9, 1921, the Union State Bank at Nez Perce, Idaho, failed to open for business. On the morning of that day the following telegram was sent to the state commissioner of finance at Boise:

"Bank closed today by order of board of directors. Advise. [Signed] C. W. Booth, President."

And, as alleged and admitted in the pleadings, upon the same morning there was posted upon the front door of the bank the following notice:

"This institution is closed and is now in the hands of the department of finance, state of Idaho. [Signed] J. G. Fralick, Commissioner of Finance, by E. V. Berg, Examiner in Charge."

The order of the board of directors, referred to in the telegram, was made on the evening of November 8th, and is as follows:

"The affairs of the bank were discussed and owing to the apparent condition of the bank caused by the peculation and forged paper by former cashier, Ernest Weinss, motion was made by K. G. Osterhout and seconded by J. R. Dunham that the bank be closed for liquidation, and the state bank commissioner be notified. All present voting affirmative, unanimously carried."

Since that time the commissioner has been engaged in liquidating the affairs of the bank, pursuant to the state banking laws; Fralick being succeeded in office by the defendant Porter.

Theretofore, upon the application of the bank, the plaintiff had executed to the United States its surety bond in the sum of $50,000, to cover deposits which the bank desired to have made of moneys belonging to Indian wards on the Nez Perce Indian Reservation, and held in trust for them by the government, acting through one O. H. Lipps, Indian agent; and on November 9, 1921, of such funds there was a balance on deposit of $30,875. Thereafter, upon April 24, 1922, plaintiff paid this principal sum, together with the accrued interest thereon, amounting to $1,276.56, or a total of $32,151.56, to Lipps as such agent, and took from him an assignment of the claim therefor which he had filed with the commissioner. The defendant commissioner had been and was willing to allow the amount for ratable payment of dividends, but has at all

times declined to recognize a preferential right in either the government or the plaintiff. Hence the suit.

Plaintiff's claim of preference is predicated upon section 3466, Rev. Stat. U. S. (Comp. St. § 6372), which provides that:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

And upon section 3468 (section 6374), which passes to the surety paying the obligation all rights conferred upon the United States by the section quoted.

Upon two of the defenses argued by the defendants, namely, that a state bank is not a "person" within the meaning of the statute, and that the deposit of the Indian moneys did not create or constitute an "indebtedness" from the bank to the United States, I have heretofore held adversely to defendants; and I need not discuss them here for the added reason that a like view has more recently been taken by the appellate court in the Bramwell Case, supra. See, also, Beaston v. Farmers' Bank of Delaware, 12 Pet. 102, 9 L. Ed. 1017, and United States v. Oklahoma, supra.

A third defense, that of res adjudicata, or judicial estoppel, is predicated upon the following state of facts: On December 18, 1922, the plaintiff commenced an action in this court to establish identically the same claim, against J. G. Fralick, predecessor in office of defendant here. A motion to dismiss on the ground that upon the facts as pleaded plaintiff was not entitled to a preference, having been sustained, and plaintiff having failed to plead further, a final decree of dismissal was entered on July 10, 1923, and from this decree no appeal was taken. Conceding identity of parties and the relief prayed for in the two suits, plaintiff seeks to escape the defense upon the ground, as contended, that the complaint here exhibits material facts which were not alleged in the earlier suit. In language substantially identical with a corresponding paragraph in the former complaint, plain-

tiff still alleges that "on or about November 9, 1921," the defendant commissioner's predecessor in office "took charge of and closed the doors of the said Union State Bank * * * by reason of the fact that said bank on or about November 9, 1921, was and became insolvent," etc. But while retaining this allegation, plaintiff sets up in a later paragraph of the amended complaint the inconsistent claim or theory that the defendant commissioner took possession, not under his official authority "by reason of the fact that said bank * * * became insolvent," but by virtue of "a voluntary assignment" made by the bank "of all its property to J. G. Fralick, as the then commissioner of finance," etc. Plaintiff concedes that were it not for this new averment and the proofs supporting it, the decree of dismissal in the other case would constitute a bar.

[1, 2] The decided cases involving the doctrine of judicial estoppel are numerous, and in some respects are difficult to reconcile. Generally speaking, the scope of the estoppel is broader in a case where the former judgment was upon the same cause of action than where the causes of action are different; in the former, the judgment is conclusive, not only of the questions actually adjudicated, but also of those which might properly have been submitted, while in the latter the estoppel extends only to such issues as were actually determined. But where, as here, the former judgment pleaded in estoppel was one of dismissal following an order sustaining a demurrer, or motion challenging the sufficiency of the complaint, some of the cases apparently recognize an exception and hold such judgment not a bar to a second suit upon the same causes of action more fully pleaded. Such, for example, seems to have been the holding in Miller v. Margerie (9th C. C. A.) 170 F. 713, 96 C. C. A. 30, and the view apparently has support in the decisions therein cited from the Supreme Court. But in the comparatively recent case of Northern Pacific Ry. Co. v. Slaght, 205 U. S. 122, 27 S. Ct. 442, 51 L. Ed. 738, the Supreme Court considering at some length the effect of such a judgment of dismissal, expressly holds that: "It is well established that a judgment on demurrer is as conclusive as one rendered upon proof. * * * The question as to such judgment when pleaded in bar of another action will be necessarily its legal identity with such action. The general rule of the extent of the bar is not only what was pleaded or litigated, but what could have

been pleaded or litigated." To the same effect is Sperry & Hutchinson v. Blue (4th C. C. A.) 202 F. 82, 120 C. C. A. 354.

But assuming, in harmony with the Miller-Margerie Case, that a second suit may be waged upon the same cause of action, where, by additional allegations, the plaintiff exhibits facts sufficient in law, does the instant case fall within such exception? As already stated, in the former complaint plaintiff alleged that the commissioner took charge of and closed the doors of the bank by reason of its insolvency, and in the present complaint it still maintains this position, but also makes the other contention that possession was taken by virtue of an assignment. It does not pretend that there was any formal or expressed assignment, but only that certain acts and transactions are to be construed as implying or effecting a transfer. The underlying facts, as they were undoubtedly known to it all the time, remain the same. It would hardly be maintained that the resolution passed by the directors on the evening of November 8th in itself constitutes or operated as an assignment; upon its face it does not import such intent. It is but one of several facts which plaintiff now seeks to construe as having that effect. That is to say, taking it together with the further fact that the commissioner later took possession without objection on the part of the board of directors, plaintiff urges the theory of implied assignment. But upon the other hand, it is to be borne in mind that by virtue of his official position the commissioner had the right and, under certain circumstances, it was within the scope of his duty to take possession without an assignment. The directors undoubtedly decided to discontinue the banking business. Of this decision they notified the commissioner, without, however, intimating any preference as to the mode of liquidation, leaving that matter for future consideration. The commissioner thereupon took possession. But did he take possession under an assignment, or solely by virtue of his official authority? The most that can be said for the plaintiff is that the facts are open to two possible constructions—the one, urged in the former complaint and again asserted in the present complaint, that the commissioner took possession by virtue of his official position because of the bank's insolvency (as that term is used in the State statutes), and the other, that he took possession under an implied assignment. The two theories are inconsistent, and it is not thought that, after coming into court and

suffering defeat upon the one, plaintiff can prosecute a second suit upon the other. It is bound by its allegations and is estopped in a second suit to set up an inconsistent construction of the facts.

In the Slaght Case, supra, the predecessor in interest of the defendant Northern Pacific Railway Company was the Spokane & Palouse Railway Company, the plaintiff in the demurrer suit. In the course of the opinion the court said: "It [Spokane & Palouse Railway Company] elected between those rights and rights under the Powers deed, and we think its grantee [Northern Pacific Railway Company] is now bound by that election. The [only] interest that the Spokane & Palouse Railway Company derived from Powers was of the right of way, which is now claimed by plaintiff in error. In other words, plaintiff in error, as successor of the Spokane & Palouse Railway Company, again asserts title to the very property that was the subject of the other suit, the source of title, only, being different. If this may be done, how often may it be repeated? If defeated upon the new title, may plaintiff in error assert still another one, either in its predecessor or in itself, and repeat as often as it may vary its claim? The principle of res adjudicata and the cases enforcing and illustrating that principle declare otherwise."

In Bienville Water Supply Co. v. Mobile, 175 U. S. 109, 20 S. Ct. 40, 44 L. Ed. 92, there was a judgment of dismissal on demurrer. On the same day that this suit was commenced, plaintiff instituted another action against the same defendant, involving the same general subject-matter, but exhibiting additional facts and praying for additional relief. In this suit there was also a decree of dismissal rendered about seven months after the decree in the other case, and from it an appeal was taken to the Supreme Court. It is manifest from the opinion of the Supreme Court (186 U. S. 212, 217, 22 S. Ct. 820, 46 L. Ed. 1132) that had the earlier decree been pleaded in estoppel, it would have been held a bar to relief in the second action, for the reason, as suggested, that a party will not be permitted to split up into separate suits different grounds for the same relief, or by setting up additional grounds maintain a second suit for the same or additional relief.

And in the Slaght Case, supra, the court quotes with approval from one of its earlier decisions, as follows: "But the whole tendency of our decisions is to require a plaintiff to try his whole cause of action and his

whole case at one time. He cannot even split up his claim, * * * and, a fortiori, he cannot divide the grounds of recovery."

In respect to the inconsistency between the averment now made that the commissioner took possession under an assignment, and that of the former complaint that he took possession by virtue of his official authority by reason of the bank's insolvency, Old Dominion Copper M. & S. Co. v. Lewisohn, 202 F. 178, 120 C. C. A. 392, is very apposite. "But," says the court, "the decree in the demurrer suit is res judicata of the present controversy. * * * The bill stated the facts as the appellant understood them, the defendant admitted the statement to be correct; on this statement the court rendered its decree and on these facts this court and the Supreme Court rendered their judgments. Even if there were important differences on the facts, it is too late to assert them now." Certiorari denied; 229 U. S. 613, 33 S. Ct. 772, 57 L. Ed. 1352.

Upon the whole it is concluded that the judgment in the former case constitutes a bar.

While this conclusion necessitates a dismissal, I have also considered the record upon the merits:

In the Bramwell Case, after referring to some of the decisions of the Supreme Court construing section 3466, R. S. U. S., supra, Judge Gilbert, speaking for the Circuit Court of Appeals of this circuit, said: "In brief, the statute, as construed by the decisions of the Supreme Court, means this: That debts due the United States shall be first satisfied in cases where the debtor is insolvent and has not sufficient property to pay all his debts and in addition thereto either makes a voluntary assignment of his property or commits an act of bankruptcy, or his property is attached as that of an absconding or concealing debtor." This construction plaintiff accepts; and it argues, first, that upon November 8, 1921, the bank was insolvent, and, second, that the action of the board of directors on that day constituted a voluntary assignment of its property; admittedly attachment is not involved.

[3] As to insolvency: Conceding that the term "insolvency," as used in this section, is to be understood substantially in the sense defined in the National Bankruptcy Act (Comp. St. §§ 9585-9656), that is, a case where the debtor owes debts in excess of his assets at a fair valuation, plaintiff attempted to show that on November 8th and 9th when the bank's doors were closed there was such a condition of insolvency; but it is not thought its proofs are sufficient to support this contention. It exhibited a sheet in the nature of a daily statement made up by one of the defendant's assistants from the books of the bank as of November 8th, and conceiving the idea that it was necessary only to overthrow the balance disclosed in the footings, it offered evidence tending to show that a few bills receivable were either without value or were worth less than their face. This was the extent of its proofs. The method is obviously simple, and the result would be satisfactory, if the "liability" items all constituted indebtedness; but such is not the case. The sheet is an accountant's statement, about which there is always a measure of artificiality. It must be analyzed. The total footings are $359,225.99, but among the "liabilities" are capital stock $50,000, surplus $10,000, and other items that in no real sense represent actual indebtedness. From an analysis of the statement, most favorable to plaintiff, it would appear that on November 8th the bank had an excess of resources over indebtedness amounting to more than $51,000.

[4] As already suggested, plaintiff sought to show that certain bills receivable were worthless. As to some of these the testimony was insufficient to support such a finding, but a detailed discussion is unnecessary, for admittedly the items assailed do not aggregate $51,000, and indeed counsel for plaintiff concedes that insolvency is not shown unless we take the view that capital stock and surplus constitute indebtedness of a banking corporation. But such a position is untenable. Capital is not indebtedness, but a fund out of which debts may be paid. In no real sense is the obligation of a corporation to a stockholder a debt. The latter's right is not to recover a debt, but to receive a ratable share of the assets of the corporation after all its debts are fully paid. Under plaintiff's theory the least impairment of capital would necessarily effect insolvency, and a corporation with only $2,000 of indebtedness and $99,000 in its treasury is to be deemed insolvent if it has outstanding $100,000 of capital stock.

It follows that the proof fails to show the bank insolvent at the time its doors were closed. It may be added that insolvency was not in issue in the Bramwell Case, for there it was expressly stipulated that on the date it closed "the total value of the assets of the bank was less than the amount of its indebtedness."

[5] Turning now to the other factor, it is thought the record fails to show assignment. Clearly in itself the resolution of November 8th by the board of directors does not purport to be and does not constitute an assignment. As hereinbefore explained, it is simply an expression of the view of the board that the bank should discontinue business. There are no words expressing or implying assignment. True, the state bank commissioner was to be notified, but, as in the Oklahoma case, the bank commissioner had the power to act in the premises without assignment. The resolution is very different from that considered in the Bramwell Case, which provided "that the superintendent of banks for Oregon, or his assistants under his direction, be * * * given full control of the affairs of the First State Bank of Klamath Falls, Oregon," etc. The board of directors here might have made a similar order, but they chose only to close the bank and leave it to the discretion of the commissioner whether he would or would not exercise the power conferred upon him by law to take possession of and liquidate the affairs of a banking institution. As hereinbefore pointed out, while in paragraph IV of the amended complaint the plaintiff seeks to construe the resolution under consideration as an assignment, it is alleged in paragraph II that "the commissioner took charge of and closed the doors of said Union State Bank * * * by reason of the fact that said bank on or about November 9, 1921, was and became insolvent." This latter view, it is to be noted, was the one plaintiff took of the facts, the construction it placed upon them, prior to the exigency created by the Oklahoma decision (complaint filed in former case, December 18, 1922, and Oklahoma decision February 19, 1923). That apparently was the natural construction, and in the absence of the Oklahoma decision we may assume plaintiff would have continued to urge it. If it were to its interest now to rely upon this theory, could it not urge with great cogency that there was no assignment, and that the commissioner being advised of the desire of the board of directors to close up the business of the bank, took possession, not under an assignment, but by virtue of his official authority?

[6] It is argued that mere distinctions of form should be disregarded, and generally speaking that is true. It is also to be conceded that in substantial results the case does not differ from the Bramwell Case. But with equal propriety the same observations could be made upon the Oklahoma and Bramwell Cases. In each the doors of a state bank closed for business, and in each the property of the bank passed into possession of the state official to be liquidated by him for the benefit primarily of its creditors. Not only the results in the two cases, but in most respects the mode of procedure and the objects to be attained, were identical. Yet in one case a preference is denied, and in the other granted. It is to be borne in mind that the right asserted by plaintiff is strictly legal; it does not rest upon broad principles of equity, but runs counter thereto. In equity all depositors are on the same footing, and whether strong or weak, rich or poor, each is entitled to a ratable distribution of the assets of the bank without preference of any kind to any one. Plaintiff's right, if one it has, is a creature of statutory law, and as I read the decisions of the Supreme Court it exists only in a case where the facts fall strictly within the provisions of the statute from which it springs.

Enter judgment of dismissal.