## UNITED STATES FIDELITY & GUARANTY CO. v. OTTAWA COUNTY NAT. BANK.

District Court, N. D. Oklahoma.   May 4, 1929.
No. 32.

B. A. Ames and J. C. Monnet, Jr., both of Oklahoma City, Okl. (Ames, Cochran, Ames & Monnet, of Oklahoma City, Okl., of counsel), for complainant.

C. B. Stuart, of Oklahoma City, Okl., Ray McNaughton, of Miami, Okl., and J. F. Sharp, Jr., of Oklahoma City, Okl., for defendant.

KENNAMER, District Judge. This is a suit in equity involving the following facts:

Complainant, a surety company, had executed surety bonds guarantying payment of deposits of the United States and the county treasurer of Ottawa county, Oklahoma. The United States of America had on deposit in the Miami Trust & Savings Bank, when the bank was closed by the bank commissioner of Oklahoma, the sum of $2,970.54, and another deposit or fund, in the amount of $25,175. The county treasurer had on deposit the sum of $11,000, secured by warrants deposited by the bank with the county treasurer, of the face value of $7,200. Complainant had guaranteed, by bonds, the payment of the deposits by the Miami Trust & Savings Bank to the United States of America, and the sum of $5,000 to the county treasurer. Complainant seeks a decree establishing a priority of payment from the assets of the failed bank as to the deposits of the United States of America, and decree of proration with other creditors as to the deposit of the county treasurer.

The Miami Trust & Savings Bank failed December 12, 1921, and the assets passed to the bank commissioner of Oklahoma for liquidation, as provided by the statutes of Oklahoma. Thereafter, and on December 17, 1921, upon application being made by the bank commissioner, the district court of Ottawa county, Oklahoma, made an order, in conformity to the statutes of Oklahoma, authorizing the bank commissioner to transfer all of the assets to the Ottawa County National Bank. The consideration for the transfer to the defendant, which was specified in the order of the district court, was the assumption by the defendant of the liabilities of the Miami Trust & Savings Bank to its unsecured depositors. No funds or money passed to the bank commissioner from the transfer; he was a mere conduit of title to the assets of the failed bank, having transferred them to the defendant as herein described.

The further fact is that the officers and directors of the failed bank voluntarily turned over the assets of the Miami Trust & Savings Bank to the state bank commissioner on December 12, 1921, and at a time when the bank was insolvent and did not have sufficient assets to pay all of its debts. The transfer of the assets by the bank commissioner to the defendant was made without notice to the United States, the county treasurer of Ottawa county, or to the complainant, the same having been made on the day the order was made by the district court, and the application therefor was made to the court on the same day the order was entered. On the other hand, the defendant took over the assets of the failed bank with notice of the deposits of the United States of America and the county treasurer of Ottawa county, and that the deposits were unpaid.

Complainant relies upon sections 3466 and 3468, Rev. Stat. U. S. (sections 191, 193, title 31, USCA), for its claim to priority of payment of the deposits of the United States of America in the failed bank, it having paid the sums to the United States. Section 3466 is as follows:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

Section 3468 provides:

"Whenever the principal in any bond given to the United States is insolvent, or whenever, such principal being deceased, his estate and effects which come to the hands of

his executor, administrator, or assignee, are insufficient for the payment of his debts, and, in either of such cases, any surety on the bond, or the executor, administrator, or assignee of such surety pays to the United States the money due upon such bond, such surety, his executor, administrator, or assignee, shall have the like priority for the recovery and receipt of the moneys out of the estate and effects of such insolvent or deceased principal as is secured to the United States; and may bring and maintain a suit upon the bond, in law or equity, in his own name, for the recovery of all moneys paid thereon."

■ The bank commissioner of Oklahoma, in taking over the assets of a failed bank, occupies a position analogous to that of a receiver or trustee in bankruptcy. His position is for the benefit of the creditors of the bank, and he takes the assets subject to the rights of its creditors. Ward v. Oklahoma State Bank of Atoka, 51 Okl. 193, 151 P. 852; Commerce Trust Co. v. State, 59 Okl. 14, 157 P. 717; Briscoe v. Homer, 50 Okl. 281, 150 P. 1101; Strain v. U. S. Fidelity &. Guaranty Co. (C. C. A.) 292 F. 694.

There can be no doubt that the United States of America was entitled to payment "out of the estate and effects" of the insolvent bank, and was given priority for such payment. It is likewise beyond doubt that the surety, paying the claim due the United States of America, is entitled to "the like priority for the recovery and receipt of the moneys out of the estate and effects," etc. The paying surety is granted power to bring and maintain the action for such recovery in his (or its) own name, and the action may be brought and maintained in law or equity.

The provisions of the statute, supra, fairly construed, charge the assets of an insolvent principal, with the payment of such a claim, and priority therefor is expressly given. It is not necessary to construe the statute as attaching a lien upon the assets of an insolvent principal for the payment of a claim of the United States of America, but its clear language fixes a charge thereon and prescribes that the estate and effects shall be resorted to for the payment. A conversion of the estate or effects would justify an action at law for the recovery by a paying surety, and undoubtedly, if the estate or effects are available, such a surety can proceed in equity to reach the estate or effects, to obtain recovery of moneys it has paid to the United States of America. The statute affords the paying surety a remedy at law or equity, and a resort to equity is in the nature of an equitable execution, directed to the estate or

effects of the insolvent principal herein, the Miami Trust & Savings Bank.

In the instant case, the defendant occupies the same position with reference to the deposits of the United States of America, and the paying surety, as the state bank commissioner, having taken over all of the assets of the failed bank with notice of the deposits. Too, defendant took over all of the assets of the Miami Trust & Savings Bank, and not any part of them. The consideration was the assumption of the liabilities of the failed bank to its unsecured depositors. It took the assets charged with the same responsibilities to the United States of America as the failed bank or the bank commissioner had, to wit, priority of payment out of the estate or effects.

■ Defendant insists that the bank commissioner should be held answerable to complainant for not paying the claim due the United States of America from the assets of the failed bank, and relies for such contention upon Rev. Stat. U. S. § 3467 (31 USCA § 192). Undoubtedly, the bank commissioner became liable for the debt due the United States of America, but his liability is not exclusive. The statutory liability imposed upon him does not cut off or limit the operation or effect of Rev. Stat. U. S. § 3468, wherein the estate or effects are to be looked to for the payment of such claims.

It is my view that the statute, not only imposes liability upon the bank commissioner, but charges the estate or effects with the payment of the debt due the United States of America, and grants priority therefor. Under the facts as disclosed by the record in this case, complainant is entitled to priority. Bramwell v. United States Fidelity & Guaranty Co., 269 U. S. 483, 46 S. Ct. 176, 70 L. Ed. 368; United States v. State of Oklahoma, 261 U. S. 253, 43 S. Ct. 295, 67 L. Ed. 638.

■ Aside from the express charge placed upon the assets for the payment of the claim due the United States of America by the United States statutes, supra, and the remedy at law or equity provided therein, complainant is entitled to pursue the assets of the failed bank upon the theory of a trust. The bank commissioner, in taking over the assets of the failed bank, held them as a trustee for liquidation and application as the rights of the parties entitled them thereto. In re Planters' & Mechanics' Bank, Kramer v. Mothersead, 127 Okl. 209, 260 P. 472; Ardmore National Bank v. Briggs Machinery & Supply Co., 20 Okl. 427, 94 P. 533, 23 L. R. A. (N. S.) 1074, 129 Am. St. Rep. 747, 16 Ann. Cas. 133.

In the last-cited case, the court said: "The receiver of an insolvent, nongoing corporation takes the property of the company for the creditors, subject to such equities, liens, or incumbrances, whether created by operation of law or by act of the corporation, which existed against the property at the time of his appointment."

In the instant case, the bank commissioner was a mere conduit of title to the assets of the failed bank; he did not pay the depositors or creditors out of the assets of the bank, and no creditors or depositors were paid out of the state guaranty fund. The state did not, therefore, become a creditor of the failed bank, and did not obtain a lien upon the assets of the bank for the benefit of the guaranty fund. While the assets were in the hands of the bank commissioner, under the circumstances related in this case, the United States was entitled to have its deposits first paid out of the assets. Strain, State Bank Commissioner, v. U. S. Fidelity & Guaranty Co. (C. C. A.) 292 F. 694.

The bank commissioner, being in an analogous position to a trustee, holding the assets for the benefit of his trust, to wit, the payment of creditors and depositors, it follows that the assets in his hands are trust properties. All persons coming into possession of trust property with notice of the trust, and the defendant had actual notice in the present case, shall be considered as trustee and bound with respect to the special property to the execution of the trust. Collins v. Kaw City Mill & Elevator Co., 26 Okl. 641, 110 P. 734; Brooks v. Garner, 20 Okl. 236, 94 P. 694; Robinson v. Pierce, 118 Ala. 273, 24 So. 984, 44 L. R. A. 66, 72 Am. St. Rep. 160; McWilliams v. Excelsior Coal Co. (C. C. A.) 298 F. 884; McClellan v. Pyeatt (C. C. A.) 66 F. 843.

It therefore follows that, upon the theory of a trust, complainant is entitled to pursue the trust property into the hands of the defendant, who took title with notice of the trust or charge in favor of the paying surety to the United States of America, and to have the property or assets of the failed bank subjected to the payment of its claim.

As to the claim of plaintiff for the sum it paid for the deposit of the county treasurer of Ottawa county, it must be held that complainant shall share pro rata in the assets of the failed bank with the unsecured depositors. Columbia Bank & Trust Co. v. U. S. Fidelity & Guaranty Co., 33 Okl. 535, 126 P. 556.

Decree may be entered for complainant, as prayed for in its bill.