# UNITED STATES *v.* STATE OF OKLAHOMA.

## IN EQUITY.

No. 25, Original.   Argued on motion to dismiss January 2, 1923.—
Decided February 19, 1923.

1. The right to priority of payment provided for by Rev. Stats., § 3466, attaches when the conditions specified by the section come into existence; and it cannot be impaired or superseded by a state law.  P. 259.
2. The State of Oklahoma acquires no lien on the assets of a state bank under § 303 of c. 6, Rev. Laws Okla. 1910, before possession of the bank has been taken by the state bank commissioner.  P. 260.
3. The word "insolvent," as used in Rev. Stats., § 3466, and the Bankruptcy Law, applies only where a debtor's property is insufficient to pay all his debts.  P. 260.
4. But "insolvent," in the sense of the Oklahoma statute, *supra,* where it authorizes the bank commissioner, upon becoming satisfied of a bank's insolvency, to take possession and wind up its affairs, is a broader term, applicable where a bank is unable to pay depositors in the ordinary course of business, though its assets may exceed its debts.  *Id.*
5. Such a taking over of a bank by the act of the commissioner upon a finding by him of its insolvency, does not establish the right of the United States to priority of payment under Rev. Stats., § 3466, because it does not imply insolvency within the

meaning of that section and does not otherwise satisfy its conditions, either as a voluntary assignment, as an attachment of assets of an absconding, concealed or absent debtor, or as an act of bankruptcy, as defined by the Bankruptcy Act (§ 3a) or any law of the State. P. 262.

Bill dismissed.

UPON motion to dismiss the bill in a suit instituted in this Court by the United States against the State of Oklahoma, in which the plaintiff sought to establish a right of priority of payment out of the assets of a liquidating Oklahoma bank, in which it had deposited moneys as guardian of individual Indians.

*Mr. Assistant Attorney General Riter,* with whom *Mr. Solicitor General Beck* and *Mr. S. W. Williams,* Special Assistant to the Attorney General, were on the brief, for the United States.

The State of Oklahoma is the proper party defendant and this Court has original jurisdiction. When a state bank in Oklahoma becomes insolvent the State, by the action of its bank commissioner, acquires title to the bank's assets. *State* v. *Cockrell,* 27 Okla. 630. Consequently a suit against the bank commissioner is in effect a suit against the State.

Assets of an insolvent state bank in Oklahoma are subject to the Government's claim as a prior creditor under Rev. Stats., § 3466.

Whenever a debtor is divested of his property in any of the ways mentioned in this section, the " person who becomes invested with the title is thereby made a trustee for the United States and is bound to pay their debt first out of the proceeds of the debtor's property". *Beaston* v. *Farmers' Bank,* 12 Pet. 102, 132. But, to entitle the United States to priority, there must be bankruptcy or insolvency as the latter is defined by the statutes or the authorities.

The bank in this case was adjudged insolvent by the bank commissioner, who under the law was authorized to take such action. Revised Laws Oklahoma, 1910, § 302.

The position of the bank commissioner in taking charge of the bank's affairs and collecting and distributing its assets is, under the state decisions, analogous to that of a receiver or trustee in bankruptcy or of an assignee for the benefit of creditors. *Briscoe* v. *Hamer,* 50 Okla. 281.

As stated, therefore, the case is one where the United States is entitled to be paid first, unless by reason of § 303 of the state law the state itself has a prior lien on the bank's assets for the benefit of the depositors' guaranty fund.

Under § 303, Rev. Laws Oklahoma, 1910, the lien of the State does not attach until the bank commissioner takes possession of the bank and its assets. Before he may do that, he must find the bank to be insolvent, and immediately upon his doing that the priority of the United States attaches. The State, therefore, has no anterior lien such as would take precedence over the claim of the United States. Moreover, the laws of the State cannot create priority in favor of other creditors and so defeat the priority of the United States. *Field* v. *United States,* 9 Pet. 182, 200.

. That priority does not yield to any claim of creditors, however high may be the dignity of their debt. *Conrad* v. *Atlantic Insurance Co.,* 1 Pet. 386.

There is no force in the argument that by depositing the money in the state bank the United States consented to the State's method of distributing the bank's funds and thereby waived its claim to priority, because Congress alone has power to waive rights of the Government, and there is no pretense that Congress has done so in this case. Nor was the United States compelled to proceed on the bond of the surety company before enforcing its direct remedy against the debtor, for the settled rule of equity is to the contrary. *Lewis* v. *United States,* 92 U. S, 618,

The United States is entitled to priority in regard to moneys which it has deposited as guardian of the Indians.

*Mr. William H. Zwick,* with whom *Mr. George F. Short,* Attorney General of the State of Oklahoma, was on the brief, for defendant.

MR. JUSTICE BUTLER delivered the opinion of the Court.

This is a suit commenced in this Court by the United States against the State of Oklahoma to establish priority in favor of the United States under § 3466 of the Revised Statutes and to have a debt owing by the state bank of Guthrie, Oklahoma, paid before any distribution of the assets of the bank.

The case was heard on the motion of the State to dismiss the complaint on the ground that the allegations thereof are not sufficient to constitute a cause of action.

The facts as set forth in the complaint are in substance the following. The bank was organized under the laws of Oklahoma, and was engaged in a general banking business at Guthrie until, October 26, 1921, it was found insolvent under the state law and unable to pay its debts and unable to continue as a going banking concern. The United States, under various acts of Congress, is guardian of certain incompetent and restricted Indians residing within Oklahoma, and as such guardian caused to be deposited in that bank certain sums of money received by the United States, through the office of the superintendent of the Five Civilized Tribes in Oklahoma, on account of certain individual members and allottees of such tribes who were incompetent and restricted and wards of the United States. Before such deposit was made the bank, pursuant to regulations prescribed by the Secretary of the Interior, delivered to the United States a bond with the Fidelity and Casualty Co. of New York as surety thereon to secure the payment of such funds, and that bond is in

force; on October 26, 1921, the sum so deposited and due the United States amounted to not less than $42,000 with interest. October 7, 1921, a state bank examiner made an examination of the bank and found that it was insolvent under the Oklahoma law and unable to pay its debts and to continue as a going banking concern, and so reported to the bank commissioner who, on October 26, 1921, adjudged the bank insolvent and took charge and possession of its assets, books and records for the purposes specified in the state depositors' guaranty fund law. The assets of the bank so taken and now in the possession of the bank commissioner are in excess of the amount claimed by the United States; and the United States claims to be entitled to have its debt first satisfied in full out of such assets, before other creditors are paid anything. Demand for such prior payment was made by the United States and refused by the State.

The claim of priority asserted by the United States is based upon § 3466 of the Revised Statutes of the United States, which provides:

" Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

The applicable provisions of the Oklahoma statutes are found in c. 6 of the Revised Laws of Oklahoma, 1910. A state banking board is created and given the supervision and management of a depositors' guaranty fund, created by levying assessments against the capital stock of each bank and trust company.

50947°—23——17

The provision of § 302, under which possession of the bank and its assets were taken, is as follows:

" Whenever any bank or trust company organized or existing under the laws of this State shall voluntarily place itself in the hands of the bank commissioner, or whenever any judgment shall be rendered by a court of competent jurisdiction, adjudging and decreeing that such bank or trust company is insolvent, or whenever its rights or franchises to conduct a banking business under the laws of this State shall have been adjudged to be forfeited, or whenever the bank commissioner shall become satisfied of the insolvency of any such bank or trust company, he may after due examination of its affairs, take possession of said bank or trust company and its assets, and proceed to wind up its affairs and enforce the personal liability of the stockholders, officers and directors."

The State asserts a lien superior to the priority rights of the United States, under § 303, which is as follows:

" In the event that the bank commissioner shall take possession of any bank or trust company which is subject to the provisions of this chapter, the depositors of said bank or trust company shall be paid in full, and when the cash available or that can be made immediately available of said bank or trust company is not sufficient to discharge its obligations to depositors, the said banking board shall draw from the depositors' guaranty fund and from additional assessments, if required, as provided in Section 300, the amount necessary to make up the deficiency; and the State shall have, for the benefit of the depositors' guaranty fund, a first lien upon the assets of said bank or trust company, and all liabilities against the stockholders, officers and directors of said bank or trust company and against all other persons, corporations or firms. Such liabilities may be enforced by the State for the benefit of the depositors' guaranty fund."

The United States, asserting that it is not bound first to proceed on the bond of the surety company (citing

*Lewis* v. *United States,* 92 U. S. 618), invokes jurisdiction of this Court on the ground that, when the bank and its assets were taken over by the State through its bank commissioner, the State acquired title to the same and is therefore the proper party to be sued. *State* v. *Cockrell,* 27 Okla. 630; *Lankford* v. *Platte Iron Works Co.,* 235 U. S. 461; *American Water Co.* v. *Lankford, id.* 496; *Farish* v. *State Banking Board, id.* 498. No objection to jurisdiction is made by the State; and the State does not deny that the United States is entitled to priority on account of money deposited by it as guardian of the Indians to the same extent as in the case of any other deposit. The State's contentions are that § 3466 properly construed does not give the United States priority; that the State has a lien on the bank's assets, and that the priority rights (if any) of the United States are subject thereto; and that priority rights under the act do not apply where a sovereign State has a lien against its debtor.

Section 3466 relied on by the Government is a reënactment and extension of § 65, Act of March 2, 1799, 1 Stat. 676; and the same or equivalent language, so far as the question here involved is concerned, is found in earlier statutes. Act of March 3, 1797, c. 20, § 5, 1 Stat. 515; also, Act of May 2, 1792, c. 27, § 18, 1 Stat. 263; Act of August 4, 1790, c. 35, § 45, 1 Stat. 169; Act of July 31, 1789, c. 5, § 21, 1 Stat. 42. It has been considered in a number of cases in this Court. The claim of the United States to the asserted priority rests exclusively upon the statute. No lien is created by it. It does not overreach or supersede any *bona fide* transfer of property in the ordinary course of business. It establishes priority which is limited to the particular state of things specified. The meaning of the word " insolvent " used in the act and of the insolvency therein referred to is limited by the language to cases where " a debtor, not having sufficient

property to pay all his debts, makes a voluntary assignment ", etc.   Mere inability of the debtor to pay all his debts in ordinary course of business is not insolvency within the meaning of the act, but it must be manifested in one of the modes pointed out in the latter part of the statute which defines or explains the meaning of insolvency referred to in the earlier part.   *United States* v. *State Bank of North Carolina,* 6 Pet. 29, 35; *United States* v. *Fisher,* 2 Cranch, 358, 390; *United States* v. *Hooe,* 3 Cranch, 73, 90; *Prince* v. *Bartlett,* 8 Cranch, 431, 433; *Conard* v. *Atlantic Insurance Co.,* 1 Pet. 386, 439; *Brent* v. *Bank of Washington,* 10 Pet. 596, 611; *Field* v. *United States,* 9 Pet. 182, 201.   Where the debtor is divested of his property in one of the modes specified in the act, the person who becomes invested with the title is made trustee for the United States and bound first to pay its debt out of the debtor's property.   *Beaston* v. *Farmers' Bank of Delaware,* 12 Pet. 102, 133–135.   The priority given the United States cannot be impaired or superseded by state law.   If priority in favor of the United States attaches at all, it takes effect immediately upon the taking over of the bank.   The State has no lien on the assets of the bank before the taking of such possession by the bank commissioner.

Does § 3466 apply?   It requires that there shall be an insolvent debtor " not having sufficient property to pay all his debts."   The complaint does not allege that the bank's assets were not sufficient to pay all its debts.   After stating that the bank examiner found that it was insolvent and unable to pay all its debts and unable to continue as a going banking concern, and that the bank commissioner pursuant to the authority vested in him by the laws of the State adjudged the bank insolvent and thereupon took charge and possession of its assets for the purposes of liquidation, the complaint does allege that the bank was and is insolvent.   But the word " insolvent " is used in

different senses. Section 3466 makes it apply only in cases where the debtor "not having sufficient property to pay all his debts, . . ." The Bankruptcy Act of July 1, 1898, c. 541, § 1, 30 Stat. 544, provides:

"A person shall be deemed insolvent within the provisions of this Act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts."

In § 302 of the Oklahoma law, the meaning of "insolvency" of a bank is not so limited, and, when regard is had to other provisions of the Oklahoma state depositors' guaranty fund law and its object—the full and prompt payment of depositors in banks unable to carry on as going banking concerns—it is clear that the meaning there intended is not the same as in § 3466 or in the Bankruptcy Act. The bank commissioner under the Oklahoma law properly may "become satisfied" of the insolvency of a state bank whenever it is unable to pay its depositors in ordinary course of business and is unable to continue as a going banking concern, even though it has sufficient property to pay all its debts and is not insolvent within the meaning of § 3466 or the Federal Bankruptcy Act. This view is in harmony with the meaning of insolvency as defined by the Supreme Court of Oklahoma: "Independent of statute, it may generally be said that insolvency, when applied to a person, firm, or corporation engaged in trade, means inability to pay debts as they become due in the usual course of business. The definition is one generally accepted by both the state and federal courts." *Oklahoma Moline Plow Co.* v. *Smith,* 41 Okla. 498, 503.

The allegations of the complaint do not show the debtor to be insolvent within the meaning of § 3466 or of the Bankruptcy Act.

It remains to be considered whether an act of bank-
ruptcy was committed. In order to give the priority
specified in § 3466, there must be a case of an insolvent
debtor who makes a voluntary assignment of his property,
or a case in which the estate and effects of an absconding,
concealed or absent debtor are attached by process of law,
or a case in which an act of bankruptcy is committed. In
this case it is not alleged that the Oklahoma state bank
voluntarily placed itself in the hands of the bank commis-
sioner under § 302 or that it made a voluntary assignment
of its property, but it is alleged that the bank commis-
sioner adjudged it insolvent and took charge and posses-
sion of its assets. No action on the part of the bank was
necessary, and none is alleged. And it is plain that the
case is not within the absconding, concealed or absent
debtor clause.

The complaint does not expressly allege that the bank
committed any act of bankruptcy or state any facts as
constituting an act of bankruptcy. But it is claimed that
the position of the bank commissioner in taking charge of
the bank's affairs under § 302 is analogous to that of a
receiver or a trustee in bankruptcy, or that of an assignee
for the benefit of creditors. The facts set forth in the
complaint do not constitute an act of bankruptcy as de-
fined by the Federal Bankruptcy Act (§ 3a). There is
not alleged any conveyance to defraud, or preference
through transfer or through legal proceedings, or general
assignment for the benefit of creditors. Nor is the case
within the meaning of the last clause of § 3a (4) " or
because of insolvency a receiver or trustee has been put
in charge of his property under the laws of a State . . ."
The allegations do not show insolvency within the mean-
ing of § 3466 or of the Bankruptcy Act. The insolvency
contemplated by § 302 of the state law is not the same or
equivalent condition. The bank commissioner does not
take possession because of the existence of insolvency

within the meaning of these federal laws. He is not a receiver or trustee put in charge because of any such insolvency. He acts as an arm or instrumentality of the State in the exercise of its police powers to effect the purpose of the law for the protection of depositors. It would defeat the purpose of that law to require that the bank must be insolvent within the meaning defined in § 3466 or in the Bankruptcy Law before the benefit of the state law can be made available to depositors. A primary purpose of his possession is the prompt payment of depositors by the use of the state guaranty fund to the extent necessary, and the case is to be distinguished from that defined in the Bankruptcy Act, and the commissioner is not a receiver or trustee within its meaning. The legislation of Oklahoma, so far as banks are concerned, does not define acts of bankruptcy or deal with bankrupt or insolvent banks otherwise than by the state law herein referred to.

As insolvency within the meaning of § 3466 was not necessary for the taking of possession by the bank commissioner and is not shown to exist, and as no act of bankruptcy as defined by applicable federal legislation on the subject of bankruptcies or as defined by any law of Oklahoma is shown to have been committed, and as the debtor bank was not divested of its assets in one of the modes specified in § 3466, the case is not within that section.

The State's motion to dismiss the complaint is granted.

*Bill dismissed.*