## UNITED STATES v. FIRST STATE BANK OF PHILIP, S. D., et al.

(District Court, D. South Dakota. July 22, 1926.)

1. **Banks and banking ⬳80(4)—Insolvent state bank, by putting state superintendent of banks in charge, held to have made "voluntary assignment" within priority statute (Rev. St. § 3466 [Comp. St. § 6372]).**

A state bank in fact insolvent, whose officers applied to the superintendent of banks of South Dakota, who put a representative in charge of its business for two years to the exclusion of its officers and directors, and without notice to the public, and then closed its doors and took possession of its assets for liquidation under the laws of the state, *held* to have made a "voluntary assignment" of its property within the meaning of Rev. St. § 3466 (Comp. St. § 6372), giving priority to debts due the United States in cases of insolvency.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Voluntary.]

2. **Banks and banking ⬳80(4)—State superintendent of banks, on taking possession of insolvent bank for liquidation, held to have become trustee for United States under priority statute, and is bound to first pay debts due it (Rev. St. § 3466 [Comp. St. § 6372]).**

Where the superintendent of banks of South Dakota takes possession of a bank under the laws of the state because of insolvency, for the purpose of liquidating its affairs, he becomes trustee for the United States under Rev. St. § 3466 (Comp. St. § 6372) and is bound to first pay debts due it.

In Equity. Suit by the United States against the First State Bank of Philip, S. D., and Fred B. Smith, Superintendent of Banks of South Dakota. Decree for complainant.

S. W. Clark, of Redfield, S. D., E. D. Barron, of Sioux Falls, S. D., and P. J. Tscharner, of Rapid City, S. D., for the United States.

Caldwell, Caldwell & Burns, of Sioux Falls, S. D., for defendants.

ELLIOTT, District Judge. [1] The case of United States v. First State Bank of Philip and Fred R. Smith, as Superintendent of Banks, etc., has been presented for determination upon the pleadings and stipulation of facts. By this stipulation of facts it is conceded that postal funds belonging to the United States were deposited in said bank at the time the same was taken over by the superintendent of banks for liquidation; that the bank was closed December 21, 1923, and taken in charge by the superintendent of banks, as alleged in the bill of complaint; that said bank was and for more than four months had been actually insolvent—i. e., that it did not have assets sufficient, at a fair valuation, to equal its liabilities. It is stipulated that two years prior to December, 1923, the officers of the defendant bank, on account of the depressed financial condition of the bank, went to Pierre, the capital of South Dakota, for a conference with the then superintendent of banks, and inquired what should be done with the bank on account of its condition, and they were then and there informed by the superintendent of banks that on account of its condition he would have to appoint a representative of his department to take charge of the bank, and immediately thereafter he named the then cashier of the defendant bank as a representative of the state banking department to take charge of said bank, and he immediately did so, and managed the same as a going banking concern up to its closing, in December, 1923. It is further stipulated that it was agreed that this fact was not known to the public or to the postmaster mentioned in the bill of complaint at any time; that upon the date of his appointment the representative of the banking department took charge of the bank and managed the same without any authority or control on the part of the board of directors of the bank, except in an advisory capacity. It is further stipulated that on or about the 21st of December, 1923, the representative of the banking department closed the bank because of its financial condition, and posted a notice upon the door stating, in substance, that the same was closed and was under charge of the superintendent of banks of the state of South Dakota; that this was the first notice given the public of the bank being in charge of the

superintendent of banks. And it is further stipulated that the defendant superintendent of banks, without protest or objection on the part of the officers and directors of said bank, forthwith took possession of the bank and its assets for the purpose of liquidating and winding up its affairs; that from the date of receiving the moneys and deposits of the postal department specified in the complaint, and on the closing of said bank, the said bank at all times had cash assets in a sum greater than the amount claimed by plaintiff herein.

Counsel for defendants refer to United States v. Oklahoma, 261 U. S. 253, 43 S. Ct. 295, 67 L. Ed. 638; Strain v. U. S. F. & G. Co. (C. C. A.) 292 F. 694; Id., 264 U. S. 570, 44 S. Ct. 334, 68 L. Ed. 854, and call the court's attention to the fact that, in the first case above cited, the United States was not given a preference, for the reason that it did not appear that the bank's assets were less than its liabilities; in other words, that it was actually insolvent within the meaning of the term as used in the United States statutes, and in the latter case that the Circuit Court of Appeals held the United States was not entitled to preference where the bank was taken in charge by the banking commissioner for actual insolvency—that is, where the bank's assets were, at a fair valuation, less than its liabilities—and concede that the facts are not fully stated in the Strain Case. Counsel for defendants then call the attention of the court to Bramwell v. U. S. F. & G. Co., 269 U. S. 483, 46 S. Ct. 176, 70 L. Ed. 368, decided January 11, 1926, and assume that the facts in this case are the same as in the Strain Case, except that in the Bramwell Case the bank was closed by resolution of its board of directors, and counsel urge that on this account the court held and decided that there was in necessary effect an assignment for the benefit of creditors. It is further urged that in United States v. Butterworth-Judson Corporation, 269 U. S. 504, 46 S. Ct. 179, 70 L. Ed. 380, it is held that the defendant bank must have done some affirmative act that can be held equivalent to an assignment for benefit of creditors, and in this case attention is called to the fact that this defendant corporation filed an answer admitting all of the allegations in the complaint in a suit brought to have a receiver appointed, and affirmatively consented to such appointment. My attention is also called to Price v. United States, 269 U. S. 492, 46 S. Ct. 180, 70 L. Ed. 373, and to the fact that in this case defendant answered and joined in the prayer of the plaintiff and thus co-operated with the plaintiff to have a receiver appointed. Counsel for de-

fendants urge that in none of the opinions does the court mention the Strain Case above referred to, and conclude that decision in the Strain Case was upon facts differing from all the other decisions above referred to, but that the facts in the Strain Case are substantially the same as the facts in the case at bar, and therefore, in the case at bar, and in all cases where there is United States money in a state bank, and where a state bank is closed, not by its own officers, but by action of the state banking department, the United States has no priority.

With due regard for the contention of counsel for defendants in this case, and recognizing the difficulty that confronted counsel in attempting to reconcile these various decisions, with the brief statement of facts appearing in the reports, I am of the opinion that after all there should be little difficulty in arriving at the true intent and purpose of the statutes upon which plaintiff relies for recovery, and, with a liberal interpretation of the statutes, little difficulty in determining the rights of the plaintiff in the case at bar.

Plaintiff asserts the right of priority under and by virtue of section 3466, R. S. U. S. (Comp. St. § 6372), which provides:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of executors or administrators, is insufficient to pay all the debts due from the deceased, debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

In Re United States v. Oklahoma, supra, the court emphasizes that this claim rests exclusively upon the statute. No lien is created by it. It establishes priority which is limited to a particular state of things specified. The meaning of the word "insolvent" is discussed, and it is specifically held that:

"Where the debtor is divested of his property in one of the modes specified in the act, the person who becomes invested with the title is made trustee for the United States and bound first to pay its debt out of the debtor's property."

This case then proceeds to emphasize the character of the insolvency, and in that particular case that insolvency, within the meaning of the United States statute, upon the face of the record, did not necessarily exist. In

261 U. S. at page 262, 43 S. Ct. 298, it specifically holds that:

"In this case it is not alleged that the Oklahoma State Bank voluntarily placed itself in the hands of the bank commissioner," etc.

It will be noted, too, that in this decision, and in the Strain Cases, no emphasis is placed upon the Oklahoma banking statute, and no attempt made to analyze the effect of procedure taken in harmony with its provisions, in the light of the provisions of this section of the statutes of the United States, giving the government a preference.

In Re Price v. United States, supra, it is held that said section 3466 "is to be construed liberally. Its purpose is not to be defeated by unnecessarily restricting the application of the word 'debts' within a narrow and technical meaning"—citing Miller v. Robertson, 266 U. S. 243, 45 S. Ct. 73, 69 L. Ed. 265.

Under the stipulated facts in this case the officers of the bank went to the superintendent of banks, some two years before the bank closed, and turned the bank over to the representative of the superintendent of banks; it was run by the banking department without informing the public of the change by appointing the cashier the representative of the superintendent of banks, and finally the cashier in charge closed the bank, posted the notice, and the defendant superintendent of banks openly took charge of the bank and its assets for liquidation. In the first place it occurs to me that it does not require a forced interpretation of the acts of the officers of this bank to say that they turned the bank over to the defendant superintendent of banks for liquidation two years before the public was given notice of it, and, in view of the fact that it is conceded that they exercised no control over the management of the bank, and that the same was in the hands of the representative of the defendant superintendent of banks, it would seem that a reasonable construction of that possession by him for that entire two years was that he took the bank and its assets and held them and managed them during those two years as trustee for the benefit of all of the creditors of the bank, and, when notice was given to the creditors by closing the bank and posting the notices on the door, it was nothing less than a recognition by him, as representative of the defendant superintendent of banks, that the officers of the bank had placed the assets of the bank in his hands for the benefit of creditors, and a public declaration of the trust that had been theretofore imposed. The stipulation concedes insolvency within the meaning, intent, and purpose of the federal statute. It is admitted that the total value of the bank's assets were less than its debts, and that it was insolvent. It is admitted that the amount claimed by the plaintiff is a debt due the United States. The United States is entitled to priority if, within the meaning of section 3466, the bank made a voluntary assignment of its property or committed an act of bankruptcy.

"That section is to be liberally construed. * * * And it is manifest that Congress intended to give priority of payment to the United States over all other creditors, in the cases stated therein. * * * The act applies to all debts due from deceased debtors whenever their estates are insufficient to pay all creditors, and extends to all debts due from insolvent living debtors when their insolvency is shown in any of the ways stated in section 3466. * * * That priority does not attach while the debtor continues the owner and in possession of the property. * * * Whenever he is thus divested of his property, the person who becomes invested with the title is thereby made a trustee for the United States, and is bound to pay their debt first out of the proceeds of the debtor's property." Bramwell v. United States, supra.

It is here in this opinion that the Supreme Court of the United States analyzes a situation that applies with full force in the case at bar:

"Emphasizing the view that the priority act does not apply unless insolvency is manifested in one of the modes there indicated, contends that the resolution of the board of directors was not a voluntary assignment and did not divest the bank of the title; that, as the Bankruptcy Act [Comp. St. § 9585 et seq.] does not apply to banks, there was no act of bankruptcy committed; that, under the state law, title remains in the bank after the superintendent takes possession and until he disposes of the property in the course of liquidation."

An Oregon case (United States F. & G. Co. v. Bramwell, 108 Or. 261, 217 P. 332, 32 A. L. R. 829), is then cited, and the Supreme Court goes on to say that the question in that case is whether the state, as depositor in an insolvent bank taken over by the superintendent of banks, was entitled to priority as a sovereign right. The court held that it was, and that its right was not defeated by the taking of the property by an administrative officer of the state before the state asserted its claim for priority, and that the bank's title was not divested until the assets were sold in the course of liquidation. The Bramwell Case then goes on to say:

"The specified ways in which insolvency

14 F.(2d)—35

may be manifested include all cases in which an insolvent debtor makes an assignment of his property; there is no exception, and no regard is had to the purpose or manner of the assignment; and they include all cases in which an act of bankruptcy is committed under the laws of a state or under a national bankruptcy law. * * * The priority act does not expressly require that the insolvent debtor should be 'divested' or that the person on whom is imposed the duty to pay the United States first shall become 'invested' with the title. Appellant, arguing that such transfer of title is necessary, stresses general statements to that effect from opinions of this court. [Citations.] None involved the legal effect of acts similar to those presented here. It is a rule of universal application that general expressions used in a court's opinion are to be taken in connection with the case under consideration. * * * The language on which appellant relies was properly used in respect of the matters presented for decision in the cases cited by him. But, when the passages are read in the light of the facts consid-. ered and questions decided, they do not establish that the things done in this case did not in substance and effect amount to a voluntary assignment or to an act of bankruptcy."

"Section 3a (4) of the Bankruptcy Act, as amended February 5, 1903, c. 487, 32 Stat. 797 [Comp. St. § 9587] provides: 'Acts of bankruptcy by a person shall consist of his having * * * (4) made a general assignment for the benefit of his creditors, or, being insolvent, applied for a receiver or trustee for his property or because of insolvency a receiver or trustee has been put in charge of his property under the laws of a state, of a territory, or of the United States.' The fact that banks are not subject to that act is of no moment. The reference to an act of bankruptcy in section 3466 is general, and is for the purpose of defining one of the ways in which the debtor's insolvency may be manifested. The priority given does not depend on any proceeding under the bankruptcy laws of state or nation. There is nothing in the language of that section, and no reason has been suggested, to indicate a purpose to give priority in the case of a debt due the United States from a debtor subject to the Bankruptcy Act and to deny priority, under like circumstances, when the debt is due from an insolvent bank or other debtor to whom the act does not apply. The specification in section 3466 of the ways insolvency may be manifested is aided by the designation in section 3467 [Comp. St. § 6373] of the persons made answerable for failure to pay the United States first from the inadequate estates of deceased debtors or from the insolvent estates of living debtors. The persons held are 'every executor, administrator, or assignee or *other person.*' The generality of the language is significant. Taken together, these sections mean that a debt due the United States is required first to be satisfied when the possession and control of the estate of the insolvent is given to any person charged with the duty of applying it to the payment of the debts of the insolvent, as the rights and priorities of creditors may be made to appear."

Thereupon the opinion reviews the statutes of the state of Oregon, which, like the statutes of South Dakota, provide for the handing over of the property of insolvent banks to the superintendent of banks, to be by him administered and disposed of for the benefit of creditors. In the Bramwell Case it is said:

"By the resolution of the directors in this case, the bank was wholly divested of the possession and control of its property and business."

By the stipulation in the case at bar, the officers of the bank, two years before it was publicly announced, went to the defendant superintendent of banks, and turned the same over to him, and the same was thereafter managed by him through his representative, without hindrance or assistance from the officers of the bank, and the possession and management of the bank was exclusive in the representative of the defendant superintendent of banks. It is said in the Bramwell Case that the exclusive possession and control passed for the purpose of liquidating the debts of the bank. This may be said just as truthfully under the stipulation of facts in the case at bar. In the Bramwell Case it was said that under the state law, when the superintendent of banks took possession of the assets of the bank, liens thereon, amounting in all to more than the value of the property, attached in favor of the depositors. The Supreme Court of South Dakota has recently held in Re Bank v. Rundell, 206 N. W. 231, that the superintendent of banks, under the state statute, takes possession and must administer the affairs of the bank through the court, and that this remedy is exclusive. This statute and decision of our Supreme Court is in direct harmony with the provisions of the Oregon statute construed by the Supreme Court of the United States. The Supreme Court in the Bramwell Case said:

"The state law excludes all other methods for the liquidation of the debts of insolvent banks. Appellant's duties were in substance

the same as those of a trustee having the legal title of property for the purpose of converting it into money to be paid over to specified persons. The state law required him to perform the functions of an assignee, receiver, or trustee for the liquidation of the debts of an insolvent."

The provisions of the South Dakota statute are so plain as to the duties of the superintendent of banks and the relation that he sustains to the trust fund and the depositors that there can be no contention that his duties are not in clear harmony with the citation by the Supreme Court of the United States defining the duties of the superintendent of banks under the provisions of the Oregon statute. If, under the stipulation of facts, there is a difference of opinion as to when this property was turned over to the defendant superintendent of banks, and if it were conceded that he did not really take possession under the provisions of the statute of the state, for liquidation, until the bank was closed and notice posted, under our statute no receiver could have been appointed for this insolvent bank, and the sole person authorized to act as receiver or trustee of insolvent banks is the defendant superintendent of banks. It is admitted in the stipulation that the only reason he took possession of the defendant bank was because it was insolvent. In re United States v. Butterworth-Judson Co., and Price v. United States, supra, there seems to have been some reliance upon assent, either implied or express, to the appointment of a receiver. But it occurs to me that, if in either of these cases there had been a default, if after notice to them there had been no appearance, I apprehend an implied assent would have been determined. Under the provisions of the South Dakota statute, the defendant superintendent of banks was ex officio receiver of all insolvent banks, and he was directed to take charge of this bank, as he did, when, in his opinion, it was insolvent. There is protection afforded the bank and its officers by a provision that, if the superintendent wrongfully decides a bank is insolvent, the officers may protest the action of the superintendent of banks by invoking the statute which gives the bank a right to question the propriety of the superintendent's act. I am of the opinion that failure to do this is, in effect, an assent by the officers to the action of the superintendent of banks, and is, in effect, an assent to the appointment of a receiver, within the purview of the Bankruptcy Act. This latter suggestion is made in view of the stipulated facts, and the fact that the officers put this bank in charge of the superintendent two years before

cannot be ignored in determining the relation that the defendant superintendent held to the assets of the bank and to the creditors of the bank when actual liquidation was begun. Under the stipulated facts, it was they who made the first move, and not the superintendent of banks. They went to him at his office at Pierre, the capital of the state, informed him of the condition of the bank, and then entered into an arrangement with him above referred to. It would seem, therefore, that, in the light of all of these facts, there is not an implied but an express consent to the taking possession of this bank and its assets by the defendant superintendent of banks, finally resulting in the closing of the doors of the bank, the posting of the notice, and the beginning of the liquidation of the bank. If this is true, it is within the terms of the decision of the Supreme Court of the United States in Re Butterworth-Judson Co. and the Price Case, supra. Lest I be misunderstood, I am of the opinion that there need not be express consent on the part of the managing officers to the act of the superintendent of banks. His act in taking charge because of insolvency, and the failure of the bank officers to protest under the provisions of the South Dakota statutes, is sufficient to support the claim of the plaintiff herein.

The duties of the defendant superintendent of banks, immediately upon his taking possession of the bank, either in the exercise of his judgment under the provisions of the statutes, of this state, or by the overt acts of the officers, were, in effect, the same as the duties of a trustee having the legal title to the property for the purpose of converting it into money to be paid over to the persons entitled thereto. The state law of South Dakota requires him to perform the duties of an assignee, receiver, or trustee for the liquidation of the debts of an insolvent bank.

"The established rule of liberal construction requires that the priority act be applied having regard for the public good it was intended to advance. Its application is not to be narrowly restricted to the cases within the literal and technical meaning of the words used." Bramwell, supra.

[2] I am therefore of the opinion that it should be held in this case that within the meaning of the priority act the defendant bank made a voluntary assignment of its property, and, further, that, independent of the voluntary assignment of the property, the defendant superintendent of banks, under and by virtue of the provisions of the statutes of the state of South Dakota, may, in the exercise of a wise discretion, acting within the

provisions of the statute, take possession of an insolvent bank, and that, in either event, because of the bank's insolvency, he becomes a trustee in charge of its property, under the law of the state of South Dakota, within the meaning of the Bankruptcy Act.

The United States is entitled to priority, and you may prepare and forward proper decree.