UNITED STATES ex rel. RAY, U. S. Atty., v. PORTER, Commissioner of Finance of Idaho.

District Court, D. Idaho, S. D. April 7, · 1927.

No. 1296.

1. **Pleading** &#9758;354(2)—Motion to 'strike answer to suit by United States to recover deposits will be denied, when specifically denying that moneys were government funds (Comp. St. § 6372).

Where answer in suit by the United States to recover postal and forestry funds deposited in state bank specifically denied that funds belonged to United States, within meaning of Rev. St. § 3466 (Comp. St. § 6372), providing for payment of debts in full in case of insolvency, general motions to strike answers will be denied, for the purpose of taking testimony to determine character of such funds.

2. **Banks and banking** &#9758;80(7)—That postal and forestry moneys were deposited in names of officials would not make indebtedness any less indebtedness to United States (Comp. St. § 6372).

Fact that postal and forestry funds were deposited in names of postmasters, or drafts of bank were purchased therewith, and not

paid, would not make indebtedness of banks any less an indebtedness to United States, within Rev. St. § 3466 (Comp. St. § 6372), since postmasters and forestry officials were authorized to receive and deposit any public funds in banks and legal effect was that they were deposited as public moneys.

3. **Banks and banking** ⬤⟾80(2)—**United States, in proceeding to recover public funds from insolvent state bank need not pursue steps required by state law (Comp. St. § 6372).**

The United States, in proceeding under Rev. St. § 3466 (Comp. St. § 6372), to recover public funds in insolvent state bank, is under no obligation to pursue steps provided for in state law, since priority given by United States cannot be impaired or superseded thereby.

4. **Banks and banking** ⬤⟾80(7)—**United States is entitled to priority, after suspension of payment and finding of insolvency of state banks having funds on deposit (Comp. St. § 6372).**

Where state banks, having on deposit United States funds, suspended payment and were found to be insolvent by state commissioner of finance, United States was then, under Rev. St. § 3466 (Comp. St. § 6372), entitled to have property dealt with as a trust fund, and its rights or priorities recognized under the statute.

In Equity. Suit by the United States, on the relation of H. E. Ray, United States Attorney for the District of Idaho, against E. W. Porter, Commissioner of Finance of Idaho. On motion to strike answers in this and other similar suits between the same parties. Motions denied.

H. E. Ray, U. S. Atty., and Sam S. Griffin, Asst. U. S. Atty., both of Boise, Idaho, for plaintiff.

John R. Becker, of Lewiston, Idaho, and Oppenheim & Lampert, of Boise, Idaho, for defendant.

CAVANAH, District Judge. This is one of the 15 suits between the same parties, presenting substantially the same questions, which have been consolidated for trial, brought by the United States against the defendant, as commissioner of finance of the state of Idaho, to recover certain moneys claimed to have been deposited as postal and forestry funds of the United States by various local postmasters and a forestry officer of the government in certain state banks, which were closed and in some instances voluntarily assigned by their directors to the defendant and taken over by such commissioner for creditors. The motions of the defendant to dismiss the bills of plaintiff having been denied, the defendant filed his answer in each case, to which the plaintiff moved to strike upon the ground that they admit of sufficient allegations of the bills to entitle the plaintiff to recover.

As the motions are directed to the answers generally, and not to specific portions, and the answers contain certain denials of material allegations of the bills, as well as affirmative defenses, they should not be sustained, but the facts presented before all of the questions could be decided. At the oral argument and in the briefs certain questions were argued by counsel, which relate to the scope of the evidence to be taken, and my views upon them are requested. An analysis of the pleadings present sufficient conceded facts to warrant the court in disposing, upon the pleadings, of two of the questions presented:

[1, 2] (1) Whether the deposits by these public officials constituted the banks debtors to the United States, within the meaning of section 3466 of the Revised Statutes of the United States (Comp. Stats. § 6372), providing for the payment of the debts in full in case of insolvency. The denials and general averments in the answers are contradictory as to the manner in which these postal and forestry funds were deposited in the banks, and it will necessitate the taking of testimony in order to clarify the situation, as it is denied that these moneys belonged to or were deposited in the banks for or on behalf of the United States, or were postal or forestry funds, and at the same time by general averments it is stated that these funds were deposited in the banks in accordance with the usual course or practice of postmasters in municipalities wherein no government depositary existed, and that the claims covering them, filed by the postmasters and forestry official, recited that they were made under section 3466 and are the funds of the Post Office and Forestry Departments, and subject to preference as provided for under section 3466.

There appears upon each of these claims an indorsement of the defendant allowing them as general claims of creditors and payable to the name of the postmaster as "such postmaster." Should it appear that these moneys were actually postal and forestry receipts of the United States, and deposited in these banks by the postmasters or forestry official of the government, they would be public moneys, and it would make no difference how the account of such deposits were carried in the banks, or whether in some instances drafts of the banks were purchased with such funds and not paid, as the form of the indebtedness is immaterial. The fact that

it may further appear that the moneys were deposited in the names of the postmasters, or drafts of the banks were purchased therewith and not paid, would not make the indebtedness of the banks any the less an indebtedness to the United States. United States v. Brock (D. C.) 5 F.(2d) 265. The postmasters and the forestry official were authorized to receive and deposit these public funds in the banks, and the legal effect is that they deposited the moneys as public moneys. Dugan v. United States, 3 Wheat. 180, 4 L. Ed. 362.

The controlling question, then, is: Were the moneys, when so deposited, or drafts of the banks purchased therewith, the postal and forestry funds of the government? If so, then the United States would have the right to sue for them. The language of the statute is general, and applies to all corporations and persons who may be indebted to the United States. Lewis v. United States, 92 U. S. 618, 23 L. Ed. 513. In this connection it is urged by the defendant that the remedy of the United States is against the postmasters and forestry official, and their bondsmen, and not against the defendant, who is now liquidating the affairs of the banks, as the banks are indebted to the individual postmasters and forestry official, who are in turn indebted to the United States. And further, as the claims filed by the postmasters and forestry official with the commissioner covering these deposits have been assigned to the United States, the only interest acquired by the government in them was such as the assignors had as general creditors, and are subject to all the limitations and estoppels existing against such claims at the time of the assignment.

It is conceded under the pleadings that the defendant still has in his hands sufficient funds of the banks to pay these claims in full. The thought, then, should be kept in mind that, if these deposits and funds used in the purchasing of drafts of the banks were actually the postal and forestry funds of the government, they would not be debts due the postmasters and forestry official, but debts due the government. These postmasters and forestry official were merely agents, intrusted with the collection and transmission of the funds, which belonged to the government at all times. United States v. Brock, supra. If such funds are the property of the United States, it then follows that a right of action for a preference accrued to it to recover under section 3466, in the event of the insolvency of the banks, or a voluntary assign-

ment thereof, or, with the acquiescence of the stockholders or board of directors, the estate was taken possession of and administered by the commissioner, and it would not depend upon or be governed by any procedure prescribed by the state law.

[3] The United States is under no obligation to pursue the steps provided in the state law, or of appealing to the state court from the order of the commissioner disallowing priority of the claims, as it has a right of action granted by section 3466. The Supreme Court says: "The priority given the United States cannot be impaired or superseded by state law." United States v. Oklahoma, 261 U. S. 253, 43 S. Ct. 295, 67 L. Ed. 638. Nor is the United States "bound by any statute of limitations, unless Congress has clearly manifested its intention that they should be so bound." Liberty Mut. Ins. Co. v. Johnson Shipyards Corp. (C. C. A.) 6 F.(2d) 752.

(2) The interesting and important question remains whether the facts conceded by the pleadings bring these cases within the plain terms and meaning of section 3466. This requires a careful analysis of this section, and the bills and answers.

The bills allege, and the defendant admits, that a number of these banks were closed by affirmative formal action upon the part of their board of directors, and others upon the action of the finance commissioner of the state, whose orders were never objected to, or any action taken by any of the stockholders or directors against the placing of the estate and liquidation of the affairs of the banks in the possession of the commissioner, who by operation of law was charged with the duty of liquidating their affairs in the interest of creditors. Their inability to pay all of their debts in full, on account of their assets being insufficient, their voluntary assignments and closing the banks in a number of instances, and acquiescence in others upon the part of their stockholders and directors, created a state of insolvency within the meaning of section 3466, and present conditions for the application of the statute.

Section 3466 provides:

"Whenever any person indebted to the United States is insolvent, * * *, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are at-

tached by process of law, as to cases in which an act of bankruptcy is committed."

[4] This section is to be liberally construed. The language is without qualification. There must be either insolvency or bankruptcy. A fair construction of its provisions under modern authority is that, whenever a debtor whose assets are insufficient to pay his debts in full is divested, either by voluntary surrender of his property, or he acquiesces in the possession and administration of such estate in the interest of creditors by an authorized state officer, such person becomes insolvent, and the officer taking over the property, where the estate is indebted to the United States, is made a trustee for it, and is bound to satisfy debts due to the United States first. These banks suspended payment and were found to be insolvent by the commissioner after he took possession of their assets, as he states in his answers that the assets are less than the debts. The United States was then entitled to have the property dealt with as a trust fund, and its rights and priorities recognized under the statute. Mr. Justice Butler, in the Price Case, says:

"While in effect the complaint alleged that defendant was solvent, the facts set forth indicate that it was in a failing condition. And it was found to be insolvent within a short time after the appointment of the receiver. When the assets turned out to be less than the debts, the creditors were entitled to have them dealt with as a trust fund and distributed among them according to their rights and priorities. Under the statute, claims of the United States must first be satisfied." Price v. United States, 269 U. S. 492, 502, 46 S. Ct. 180, 182 (70 L. Ed. 373); Bramwell v. United States Fidelity & Guaranty Co., 269 U. S. 483, 46 S. Ct. 176, 70 L. Ed. 368; United States v. Butterworth-Judson Corp., 269 U. S. 504, 46 S. Ct. 179, 70 L. Ed. 380; United States v. People's Trust Co. (D. C.) 17 F.(2d) 437.

This doctrine was recognized by Judge Dietrich in his memorandum decision on the motion to dismiss the bill in the instant case, as it is there stated, after referring to the Price and other cases:

"A careful review and analysis of these cases may also be found in an unreported decision by District Judge Elliott in the case of United States v. First State Bank of Philip, S. D. ([D. C.] July 22, 1926), 14 F.(2d) 543. In view of these decisions I am inclined to think the bill states facts sufficient to entitle the plaintiff to relief. They seem to establish the principle that it isn't essential to constitute an act of bankruptcy that the estate of an insolvent bank be formally assigned to the state officer who is authorized by law to liquidate insolvent banking institution. From them all I gather that if, either with affirmative formal action upon the part of the governing body of the insolvent institution, or with the acquiescence of the board of directors and stockholders, the estate is taken possession of and administered by the state officer, that fact is sufficient to bring the case within the intent and meaning of section 3466. In that view the complaint states facts sufficient."

My conclusion is that, on account of the answers containing specific denials as to the moneys involved not being funds of the United States, the general motions to strike the answers, in this and Nos. 1194, 1233, 1234, 1235, 1236, 1237, 1238, 1246, 1247, 1248, 1249, 1250, 1251, and 1295, are denied.