W. C. SAMPLE v. LEM JACKSON AND H. P. WILLIAMS, CONSTABLE OF ELIZABETH CITY TOWNSHIP, PASQUOTANK COUNTY, NORTH CAROLINA.

(Filed 22 September, 1943.)

**1. Bankruptcy §§ 7, 3½—**

In a suit by plaintiff, judgment debtor, against defendant, judgment creditor, to enjoin a sale under execution on the judgment, which was taken and docketed within four months of the bankruptcy of plaintiff, who alleges insolvency at the time of docketing, evidence that plaintiff was unable to meet his obligations as they currently became due, supported by the petition and schedules in bankruptcy, is insufficient.to show insolvency under the Bankruptcy Act of 1898, and judgment of nonsuit affirmed.

**2. Bankruptcy § 3½—**

Petition, schedules and adjudication in bankruptcy under the Act of 1898, in a proceeding filed almost four months after the docketing of a judgment against the bankrupt, under attack on account of the alleged insolvency of the bankrupt at the time of docketing, are not evidence of such insolvency.

**3. Judgments § 32—**

There is sufficient identity between two causes to support the plea of *res judicata*, unless the allegations and proof in the second show some substantial element for the support of plaintiff's case which was wanting at the former hearing.

APPEAL by plaintiff from *Bone, J.,* at February Term, 1943, of PASQUOTANK.

SAMPLE *v.* JACKSON.

The plaintiff brought this action to enjoin the enforcement by sale of land under execution of two judgments in favor of defendant, judgment creditor, against the plaintiff, judgment debtor, rendered and docketed on 20 June, 1932, respectively in the sum of $1,000.00 and the sum of $300.00.

Subsequently to the docketing of these judgments, to wit, on 19 October, 1932, Sample, the plaintiff herein, filed a voluntary petition in bankruptcy, and in his several schedules listed as unsecured debts notes in the sum of $1,300.00 to Lemuel Jackson for borrowed money; lands of a gross estimated value of $5,000.00, encumbered by three deeds of trust constituting liens upon the property in the total sum of $11,527.55, and personal property encumbered by various liens reducing the value to less than $500.00.

Following the adjudication due notice was given to all the creditors, and the first meeting of creditors was held 26 November, 1932. Actually, none of the creditors appeared at this meeting.

At this time an order was made by the referee, Honorable R. W. Herring, substantially as follows:

"From a thorough examination of the Bankrupt, his schedules, his Attorney, and from other information obtained by the Referee, it was made to appear to the satisfaction of the Court that the real estate owned by the Bankrupt is encumbered by valid liens, and that the equity therein, if any, is worth less than $1,000.00; and that a part of the personal property owned by the said Bankrupt is encumbered by valid liens, and that the equity in the encumbered personal property, together with the unencumbered personal property owned by the Bankrupt, including life insurance policies on the life of the bankrupt, is worth less than $500.00. That there is absolutely nothing in this case for unsecured creditors:

"It is, therefore, without objection, ORDERED, ADJUDGED and DECREED by the Court: (1) That the real estate and personal property owned by the Bankrupt, set out in his schedules and above referred to, including life insurance policies on the life of the Bankrupt be, and the same is hereby abandoned as assets for general creditors; and that the said real estate be, and the same is hereby assigned and allotted to the said William Camillus Sample, Bankrupt, as his Homestead, subject to valid claims resting thereon; and that the said personal property belonging to the said Bankrupt, listed in his schedules, and above referred to, including life insurance policies on the life of the Bankrupt, be and the same is hereby assigned and allotted to the said William Camillus Sample, Bankrupt, as his Personal Property Exemption, subject to valid liens resting thereon; (2) That no trustee be appointed; (3) That no

further meeting of the creditors be held; and (4) That this case be, and the same is hereby declared closed as a no-asset case."

No objection was made at any time to this order, and the method of assigning to the bankrupt his homestead and personal property exemption has not been challenged.

In due course, on 9 August, 1933, Sample received his discharge, in the usual form, providing, after recitals, as follows:

"IT IS THEREFORE ORDERED by the Court that said William Camillus Sample be discharged from all debts and claims which are made provable by said Acts against his estate, and which existed on the 19th day of October, A.D. 1932, on which day the petition for adjudication was filed by him; excepting such debts as are by law excepted from the operation of a discharge in bankruptcy."

Subsequently, the present defendant Jackson sought to enforce the judgments above described by execution and sale of the lands set apart to Sample as his homestead exemption, and Sample brought an action to enjoin the sale upon the ground that the debt had been discharged and the lien of the judgments dissolved or avoided by the bankruptcy proceeding and discharge of the bankrupt. Upon the final hearing before Judge Hamilton at the October Term, 1942, of Pasquotank Superior Court, Sample suffered an involuntary nonsuit, and the defendant officer was authorized to proceed with the execution sale. There was no appeal. The present action, subsequently brought, seeks the same remedy.

In his complaint the plaintiff sets up the proceedings substantially as here set out, and in addition thereto alleges his insolvency at the time Jackson obtained the judgments he now seeks to enforce, omitting reference to the prior action to enjoin the sale under execution. It is alleged, as a matter of law, that the judgments lost their liens by the bankruptcy proceeding and discharge of the bankrupt.

The defendant answered, denying that the proceeding in bankruptcy or the discharge of the bankrupt had the effect of avoiding the lien of his judgments; denied the insolvency of Sample at the time the judgments were taken and docketed, and pleaded that under the judgment in the former action to restrain sale under execution the controversy had become *res judicata,* and alleged as additional matter that the indebtedness had been created through fraud of the debtor and therefore was not subject to discharge in bankruptcy. This, in his reply, the plaintiff denied.

Upon the hearing the plaintiff introduced recorded evidence of the judgments against him, with dates of rendition and docketing, and of the proceeding in bankruptcy, as above set out; and further introduced

evidence tending to show insolvency of Sample at the time the judgments were taken and docketed.

Upon his plea of *res judicata* the defendant introduced the judgment roll in the former action by the plaintiff to restrain execution sales of the land under the several judgments. By stipulation of counsel it is agreed that, upon comparison of the present action, the documentary evidence in each is the same, and the only difference in the two cases was "the allegation of insolvency made by the plaintiff, which allegation alleges his insolvency at the time of the acquisition of the judgments held by the defendant Jackson, the only difference between the evidence at the trial on the other case and the evidence offered by plaintiff at the trial of this present action is the oral testimony of plaintiff, W. C. Sample, relating to his insolvency at the time of acquisition of the judgments above referred to."

The defendant, in apt time, having made motions for judgment of nonsuit upon the evidence, it was agreed by counsel that Judge Bone might consider together the motion for nonsuit and the defendant's plea of *res judicata,* or estoppel.

Motion for nonsuit was allowed and judgment was accordingly signed, from which plaintiff appealed, assigning error.

*J. W. Jennette and McMullan & McMullan for plaintiff, appellant.*
*M. B. Simpson for defendant, appellee.*

SEAWELL, J. Passing the question of whether section 67 (f) of the Bankruptcy Act of 1898 is available to the discharged bankrupt in avoiding a judgment lien taken within the four months period next preceding the filing of the petition and while he was insolvent, we first consider defendants' plea of estoppel—the effect as *res judicata* of the judgment of nonsuit rendered in the former proceeding before Judge Hamilton, which dealt with the subject of the present suit and in which the plaintiff sought the same relief.

From the stipulation of counsel there appears to be sufficient identity between the two cases and evidence adduced on the trials to support the plea of *res judicata*—unless in the allegation and proof in the present case there is some substantial element making for the support of plaintiff's case which was not present at the former hearing.

The plaintiff contends that this element is supplied by the allegation and evidence in the present suit relating to his insolvency at the time the judgments were rendered against him, and insists that Judge Hamilton's order of nonsuit in the former action must necessarily be referred to the want of such allegation and evidence therein.

It may be conceded that if the provisions of the Act which plaintiff seeks to invoke are available to him in the present proceeding—on the theory advanced by him—the difference in the two suits, if the evidence is really of the character claimed for it, is sufficient to defeat the plea of estoppel.   At least such insolvency at the time of the acquisition of the lien is essential to its avoidance under the cited provision of the Bankruptcy Act and must be shown.

But the defendant raises the question whether in the case at bar plaintiff's evidence in this respect is adequate to the issue.

The plaintiff's evidence goes so far as to indicate that he was financially unable to pay his debts at that time; that he was behind with installments at the bank and unable to pay the interest as it became due, and he introduced certain portions of his petition filed in the bankruptcy proceeding nearly four months after the docketing of the judgments, showing from the schedules filed that his assets were much less in value than his liabilities at that time.   But neither the filing of the petition nor the adjudication in bankruptcy are evidence of the existence of insolvency at the prior date when the judgments were taken, *Liberty National Bank v. Bear,* 265 U. S., 365, 68 L. Ed., 1057, 1060; *U. S. v. Oklahoma,* 261 U. S., 253, 67 L. Ed., 638; and upon the same principle, we do not regard the disclosures in the schedules filed with the petition as tending to prove such condition when the judgments were taken.

The testimony of the defendant as to his insolvency indicates no more than that he was unable to meet his obligations as they currently became due.    That would constitute insolvency as it is understood in the practice under State law and under earlier bankruptcy acts, *Flowers v. Chemical Co.,* 199 N. C., 456, 154 S. E., 736; *Mining Co. v. Smelting Co.,* 119 N. C., 417, 25 S. E., 954; *Wager v. Hall,* 16 Wall (U. S.), 584, 21 L. Ed., 504; but as the plaintiff must obtain his relief, if at all, from the Bankruptcy Act, we must observe the definitions of that law and conform our proof to its standards.

The Bankruptcy Act of 1898 provides that a person shall be deemed insolvent within the provisions of the Act "whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed or removed, or permitted to be concealed or removed with intent to defraud, hinder or delay his creditors, shall not at a fair valuation be sufficient in amount to pay his debts."   Bankr. Act, sec. 1 (15); 11 U. S. C. A., sec. 1 (15).   This definition is based upon a mathematical rule, exact but fairly easy of application.

The evidence does not institute such a comparison between the aggregate value of plaintiff's property and the total of his liabilities on the critical date, and it is therefore insufficient to engender an inference of his insolvency at that time within the meaning of the term as used in the

Bankruptcy Act. This has been considered a matter of substance, and we do not believe the Court would be justified in overlooking it in the present case.

The main proposition presented to us for decision is a matter of first impression in this State and one of importance. We expressly refrain from deciding it until it is presented to us unembarrassed by other pleas which, temporarily at least, preclude its consideration.

The judgment of nonsuit is

Affirmed.